LEE LITIGATION GROUP, PLLC
CK Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HELBERTH CABRERA,
*on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

ATLANTIC INSTALLERS, LLC, and
HERMES WILFREDO HERNANDEZ LEIVA,

Defendants.

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, HELBERTH CABRERA ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, ATLANTIC INSTALLERS, LLC. ("Corporate Defendant") and HERMES WILFREDO HERNANDEZ LEIVA ("Individual Defendant", collectively with Corporate Defendant, "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premium, (2) unpaid wages due to an impermissible policy of rounding, (3) liquidated damages, and (4) attorneys' fees and costs.

2. Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premium, (2) unpaid wages due to an impermissible policy of rounding, (3) statutory penalties, (4) liquidated damages, and (5) attorneys' fees and costs.

3. Plaintiff further alleges that pursuant to the Internal Revenue Code, 26 U.S.C. § 7434 ("IRC"), he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4. Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that, in retaining those sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391, as Defendants perform substantial business in this district.

## PARTIES

7. Plaintiff HELBERTH CABRERA is a resident of Queens County of New York. At all relevant times, Plaintiff HELBERTH CABRERA was employed by Defendants.

8. Defendant ATLANTIC INSTALLERS LLC ("ATLANTIC INSTALLERS") is a foreign corporation organized under the laws of the state of Maryland with a registered address for service of process at 162 Sullivan Road, Westminster, Maryland 21157.

9. Defendant HERMES WILFREDO HERNANDEZ LEIVA is a principal of ATLANTIC INSTALLERS. Defendant HERMES WILFREDO HERNANDEZ LEIVA controlled and managed the daily operations of ATLANTIC INSTALLERS.

10. At all relevant times, Defendants exercised operational control as it relates to all employees including Plaintiff. Defendants exercised the power to fire and hire employees, supervise, and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. Defendant issued and maintained employment records of Plaintiff, FLSA Collective Plaintiffs, and the Class.

11. At all relevant times, Defendants were and continue to be "enterprises engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

12. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13. Plaintiff HELBERTH CABRERA brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including laborers, scaffolders, demolition workers and construction workers, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

14. At all relevant times, Plaintiff HELBERTH CABRERA and FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal to pay Plaintiff HELBERTH CABRERA due to a policy of paying overtime hours at straight-rate and an illegal policy of rounding hours. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

15. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

16. Plaintiff brings claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former non-exempt employees, including laborers, scaffolders, demolition workers and construction workers, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

17. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses

are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

18. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

19. Plaintiff HELBERTH CABRERA's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices of Defendants, including (i) failing to pay overtime premium, (ii) failing to pay wages due to an improper policy of rounding, and (iii) failing to provide proper wage and hour notices upon hiring and as required thereafter pursuant to the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

20. Plaintiff HELBERTH CABRERA is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff HELBERTH CABRERA is represented by attorneys who are experienced and competent in both class action litigation as well as employment litigation and have previously represented plaintiffs in wage and hour cases.

21. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide

class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

23. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class Members within the meaning of the New York law;

b) What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their hourly rate and overtime rate;

e) Whether Defendants paid Plaintiff and the Class Members the overtime premium at one-and-one-half times their regular hourly rates for all hours worked in excess of forty (40) each workweek;

f) Whether Defendants operated their business with a policy of failing to pay Plaintiff and the Class Members for all hours worked due to a policy of time-shaving;

g) Whether Defendants operated their business with a policy of failing to provide compensation for all hours worked due to an improper policy of rounding Class Members' compensable time down to Class Members' detriment.

h) Whether Defendants provide to Plaintiff and the Class Members proper wage and hour notices at date of hiring as required under the New York Labor Law.

i) Whether Defendants provided proper wage statements informing Plaintiff and Class Members of their proper overtime rate of compensation and other information required to be provided on wage statements with each payment of wages, as required under the New York Labor Law.

## STATEMENT OF FACTS

***Plaintiff's Employment Background***

24. In or around June 2025, Plaintiff HELBERTH CABRERA was hired by Defendants to work as a laborer for Defendants. Plaintiff's employment with Defendants terminated on or about October 2025.

25. Throughout his employment with Defendants, Plaintiff HELBERTH CABRERA was scheduled to work five (5) days per week from 8:00 a.m. to anywhere between 8:00 p.m. and 12:00 a.m., for a total of twelve (12) to sixteen (16) hours per day. Furthermore, Plaintiff was scheduled to work on Saturdays from 5:00 a.m. to 3:00 p.m., for a total of ten (10) hours. In total Plaintiff worked between seventy (70) and ninety (90) hours per week. Similarly, FLSA Collective Plaintiffs and Class Members worked shifts of similar lengths.

26. From the start of his employment in June 2025, until his termination in October 2025, Plaintiff was compensated at a rate of twenty-one ($21) dollars per hour.

***Unpaid Overtime Premiums Claim***

27. Throughout Plaintiff's employment, Defendants failed to properly compensate Plaintiff and similarly situated employees proper overtime premium for time worked in excess of forty (40) hours per week.

28. At the end of each pay period, Plaintiff was paid for all regular hours of work (up to 40 hours per week) normally via an automated payroll system, but for all overtime hours (over 40 hours per week), Plaintiff was paid via a separate check at a straight regular rate. FLSA Collective Plaintiffs and Class Members were similarly paid their overtime hours via a separate check at a straight regular rate.

***Improper Rounding Claim***

29. Defendants furthermore implemented an impermissible policy of detrimentally rounding down employees' hours. When Plaintiff, FLSA Collective Plaintiffs, and Class Members arrived to and leave work, they are required to sign a time sheet and input the amount of time they had worked. When Plaintiff would input the total amount of time he worked into the timesheet, it would automatically round down. For example, if Plaintiff input a total work time of fifty two (52) hours and twenty six (26) minutes, Defendants would automatically round Plaintiff's time down, only counting fifty two (52) hours. As a result, Defendants impermissibly rounded Plaintiff's time down to his detriment and never to his benefit. Defendants similarly always rounded down FLSA Collective Plaintiffs' and Class Members' hours to their detriment and never to their benefit.

***Breach of Contract and Unjust Enrichment Claims***

30. When Defendants hired Plaintiff and Class Members, the parties entered into a contract. The covenant of good faith and fair dealing is implicit in every contract under New York law.

31. When Defendants failed to provide proper W-2 forms to Plaintiff and Class Members, Defendants breached the covenant of good faith by denying Plaintiff and Class Members the contract's expected value—specifically, the employer's share of Social Security and Medicare taxes for each employee.

32. Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies, namely the employer's share of Social Security and Medicare taxes, that should have been remitted to the IRS on behalf of Plaintiff and Class Members.

33. As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

34. An employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of their overtime earnings from Defendants beginning 6 years prior to the filing of this Complaint.

35. Defendants are also liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff and Class Members.

***WTPA Claims***

36. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

37. Up until October 2025, Defendants did not provide Plaintiff with pay stubs in violation of NYLL.

38. In failing to provide wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements

might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

39. New York Court continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

40. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

41. By failing to report Plaintiff's and Class Members' hours, Defendants were able to reduce employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is,

in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

42. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

43. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

44. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACTON ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

45. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

46. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

47. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

48. At all relevant times, each Defendant had gross annual revenues in excess of $500,000.00.

49. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their overtime wages at the proper statutory rate of time-and-one-half for all hours worked in excess of 40 hours in a workweek, due to a policy of straight pay for overtime hours, in violation of the FLSA.

50. At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them wages due to an improper policy of rounding.

51. Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiff intends to obtain these

records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

52. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

53. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

54. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages, due to a straight time policy, unpaid wages due to improper rounding, and an equal amount as liquidated damages.

55. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**
**ON BEHALF OF PLAINTIFF AND CLASS MEMBERS**

56. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

57. At all relevant times, Plaintiff and the Class Members were employed by the Defendants within the meaning of the New York Labor Law §§ 2 and 651.

58. Defendants willfully violated the rights of Plaintiff and Class Members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek due to an improper hourly rate, in violation of the NYLL.

59. At all relevant times, Defendants had a policy and practice of improperly rounding down hours that failed to pay Plaintiff and Class Members for all hours worked.

60. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

61. Defendants failed to provide a proper wage and hour notice, on the date of hiring and annually, to all non-exempt employees in direct violation of the New York Labor Law.

62. Defendants failed to provide proper wage statements with every payment issued to Plaintiff and the Class Members, as required by New York Labor Law § 195(3).

63. Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime wages, due to a straight time policy, unpaid wages due to invalid rounding, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action.

**COUNT III**

**<u>CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)</u>**

64. Plaintiff realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

65. Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

66. By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

67. Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

68. Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

**COUNT IV**

**BREACH OF CONTRACT**

69. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows.

70. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).

71. Defendants breached this duty, and consequently the parties' contract, when they paid Plaintiff's and Class Members' overtime hours in a separate check at a straight rate without withholdings or deductions, and further failed to provide proper W-2 forms. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, including Social Security and Medicare taxes, suffering a loss in the amount of the FICA taxes that Defendants should have, but did not, pay on their behalf.

## COUNT V

## UNJUST ENRICHMENT

72. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

73. To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 N.Y.3d 511, 516 (2012) (internal quotations omitted).

74. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

75. Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid overtime wages, due to a straight time policy, due under the FLSA and the NYLL;

d. An award of unpaid compensation due to Defendants illegal rounding policy under the FLSA and NYLL;

e. An award of statutory penalties as a result of Defendants' failure to comply with wage statement and notice requirements under the NYLL;

f. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

g. Disgorgement from Defendants of all illegally retained sums that should have gone towards Plaintiff's and Class Members' FICA contributions;

h. An award of liquidated damages as a result of Defendants' willful failure to pay all wages pursuant to the FLSA or NYLL;

i. An award of pre-judgment and post-judgment interest, costs, and expenses of this action, together with reasonable attorneys' and expert fees;

j. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k. Designation of this action as a class action pursuant to F.R.C.P. 23;

l. Designation of Plaintiff as a Representative of the Class;

m. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 19, 2026

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By: *<u>/s/ C.K. Lee</u>*

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*